UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALLISON R., | ) | Case No. 5:21-cv-00783-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**<u>INTRODUCTION</u>**

On May 3, 2021, plaintiff Allison R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC")

assessment was supported by substantial evidence; and (2) whether the ALJ properly evaluated plaintiff's testimony.[1]   *See* Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-12; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-15.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred in assessing plaintiff's RFC and failed to properly consider plaintiff's testimony.  The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, was 38 years old on the alleged disability onset date.  AR at 82. Plaintiff has past relevant work as a vocational instructor, massage therapist, public health nurse, general duty nurse, and case manager.  AR at 71.

On April 15, 2019, plaintiff filed an application for DIB, alleging she became disabled on July 19, 2018 due to fibroadipose vascular anomaly, femoral acetabular impingement of the left hip with a torn labrum, sacroiliac joint dysfunction, and postpartum depression.  AR at 82-83.  The agency denied the application initially and on reconsideration.  AR at 110-114, 117-120.

On August 18, 2020, plaintiff waived her right to counsel and testified at a hearing before the ALJ.  AR at 54-69.  The ALJ also heard testimony from Mary E. Jesco, a vocational expert.  AR at 70-76.  On September 30, 2020, the ALJ issued a decision denying plaintiff's claim.  AR at 28-41.

---

[1]   In her memorandum plaintiff also presented the issue of whether the Agency's decision was a product of an unconstitutional delegation of authority, but plaintiff withdrew the arguments regarding this issue in her reply memorandum. The court therefore will not address this issue.

1    Applying the well-known five-step sequential evaluation process, the ALJ

2 found at step one that plaintiff had not engaged in substantial gainful activity since

3 her alleged onset date of July 19, 2018.  AR at 31.

4    At step two, the ALJ found plaintiff suffered from the following severe

5 impairments: degenerative disc disease of the lumbar spine; torn labrum and

6 degenerative joint disease of the left hip status post reconstructive surgery;

7 fibroadipose vascular anomaly; degenerative disc disease of the cervical spine; left

8 carpal tunnel syndrome; depression; and anxiety.  *Id.*

9    At step three, the ALJ found plaintiff's impairments, whether individually or

10 in combination, did not meet or medically equal one of the listed impairments set

11 forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 32.

12    The ALJ then assessed plaintiff's RFC,[2] and determined plaintiff had the

13 RFC to perform sedentary work, except limited to: lifting or carrying no more than

14 10 pounds occasionally and less than 10 pounds frequently; standing or walking

15 for two hours each in an eight-hour workday; and sitting for six hours in an

16 eight-hour workday.  AR at 34.  The ALJ also limited plaintiff to frequent handling

17 and fingering with the left non-dominant upper extremity; and occasional overhead

18 reaching with left non-dominant upper extremity.  Plaintiff could never climb

19 ladders, ropes, or scaffolds; but could occasionally climb ramps and stairs, balance,

20 stoop, kneel, crouch, and crawl.  *Id*. Plaintiff could tolerate occasional exposure to

21 extreme cold, extreme heat, and vibration; but no exposure to hazards such as

22 unprotected heights and moving mechanical machinery.  *Id*.  Plaintiff was able to

23

24

25    [2]    Residual functional capacity is what a claimant can do despite existing
exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155-
26 56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation,
the ALJ must proceed to an intermediate step in which the ALJ assesses the
27 claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151
n.2 (9th Cir. 2007).
28

understand, remember, and carry out simple, and some complex, tasks in a routine, low-stress work setting involving few workplace changes.  *Id*.

The ALJ found at step four that plaintiff was unable to perform any past relevant work.  AR at 39.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, and found she could perform jobs that exist in significant numbers in the national economy, including order clerk, call-out operator, and lens inserter.  AR at 40.  The ALJ therefore concluded plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 19, 2018 through the date of the decision.  AR at 41.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied.  AR at 1-6.  The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support

1  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

2  F.3d at 459.  To determine whether substantial evidence supports the ALJ's

3  finding, the reviewing court must review the administrative record as a whole,

4  "weighing both the evidence that supports and the evidence that detracts from the

5  ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

6  affirmed simply by isolating a specific quantum of supporting evidence.'"

7  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

8  Cir. 1998)).  If the evidence can reasonably support either affirming or reversing

9  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

10  of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

11  1992)).

12  **IV.**

13  **DISCUSSION**

14  **A.    The ALJ's RFC Determination Is Not Supported by Substantial**

15  **Evidence**

16  Plaintiff argues that the ALJ erred in finding that plaintiff had the RFC to

17  perform sedentary work with some limitations.  P. Mem. at 4-8.  Specifically,

18  plaintiff contends the ALJ's RFC determination was not supported by any medical

19  opinion and instead was based on his own improper lay interpretation of the

20  medical evidence.  *Id*.

21  RFC is what one can "still do despite [his or her] limitations."  20 C.F.R.

22  § 404.1545(a)(1)-(2).  The ALJ reaches an RFC determination by reviewing and

23  considering all of the relevant evidence, including non-severe impairments.  *Id.*

24  When the record is ambiguous, the Commissioner has a duty to develop the record.

25  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276

26  F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is

27  ambiguous evidence or when the record is inadequate to allow for proper

28

1  evaluation of the evidence"); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)

2  ("If the ALJ thought he needed to know the basis of [a doctor's] opinion[ ] in order

3  to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by

4  subpoenaing the physician[ ] or submitting further questions to [him or her].").

5  This may include retaining a medical expert or ordering a consultative

6  examination. 20 C.F.R. § 404.1519a(a). The Commissioner may order a

7  consultative examination when trying to resolve an inconsistency in evidence or

8  when the evidence is insufficient to make a determination. 20 C.F.R.

9  § 404.1519a(b).

10         **1.**     <u>**The Medical Evidence**</u>

11         Plaintiff's medical records reflect that plaintiff has a history of a motor

12  vehicle accident in 1999 and a motorcycle accident in 2009. AR at 384. Plaintiff

13  injured her hip in February 2016 by trying to lift something while 15 weeks

14  pregnant with her first child. AR at 310. Plaintiff underwent an MRI of the

15  lumbar spine on January 8, 2019, which revealed minimal facet arthrosis resulting

16  in minimal narrowing of the bilateral neural foramina without significant central

17  canal stenosis. AR at 333. Orthopaedic treatment records from March 2019

18  showed that plaintiff complained of persistent pain, including when alternating

19  positions. AR at 310. In April 2019, plaintiff underwent a successful left hip

20  arthroscopy with labral repair, femoroplasty, and capsular closure and was

21  subsequently noted for ambulating with a post-surgery assistive device later that

22  month. AR at 305-06, 316.

23         On April 16, 2019, an x-ray of the right knee showed mild degenerative

24  changes. AR at 343. A subsequent MRI of the knee revealed a low grade sprain,

25  trace popliteal cyst trace pes anserine bursitis, low grade cartilage loss, and mild

26  edema. AR at 387. Hospital records from May 2019 indicated that plaintiff was

27  recently diagnosed with vascular anomaly of the left lateral calf, most likely to

28

represent a fibroadipose vascular anomaly, as she exhibited pain to deep palpation and mildly restricted active range of motion.  AR at 373-76.

Records from July 5, 2019 revealed that plaintiff was not responding to conservative medical management, including over-the-counter non-steroidal anti-inflammatory medications and prescription analgesics.  AR at 384.  During this same doctor visit, plaintiff underwent an MRI of the cervical spine that revealed osteophytes with mild right joint hypertrophy.  AR at 385.  In June 2019 an angiogram of the left calf confirmed venous malformation.  AR at 577.  Plaintiff experienced calf stiffness and contraction, feeling like the whole left side has compensated for the tightness in the calf.  AR at 580.  Plaintiff's treating physician recommended sclerotherapy of the lesions.  *Id*.  An MRI of the left shoulder revealed low grade partial thickness bursal sided tearing and/or fraying; mild bursitis with synovitis; mild infraspinatus and moderate upper and mid subscapularis tendonosis.  AR at 586.  An MRI of the left hand revealed mild degenerative changes.  AR at 697.

An MRI of the claimant's lumbar spine conducted in January 2019 revealed at L4-5 no more than minimal facet arthrosis, resulting in minimal narrowing of the bilateral neural foramina without significant central canal stenosis.  AR at 332-333.  In March 2019, plaintiff stated that she had been undergoing physical therapy for nine months and felt she was making progress.  AR at 310.  In November 2019, plaintiff underwent an electromyogram/nerve conduction study, which revealed positive findings for moderate carpal tunnel syndrome.  AR at 590.  Physical therapy records from February 2020 show plaintiff exhibited some improvement.  AR at 875.  By April 2020, plaintiff was assessed with cervical disc disorder with myelopathy.  AR at 637.

Additionally, plaintiff reported that she had problems with her memory and concentration due to depression, but her mental status examinations revealed that

she exhibited fair memory, insight, and judgment, and normal attention and concentration skills.  AR at 300, 423.  She also exhibited good eye contact and was calm and cooperative.  AR at 301, 422-23.

### 2.   ALJ's RFC Determination

The ALJ determined plaintiff had the ability to perform a reduced range of sedentary work, and assessed specific limitations: lifting or carrying no more than 10 pounds occasionally and less than 10 pounds frequently; standing or walking for two hours each in an eight-hour workday; sitting for six hours in an eight-hour workday; frequent handling and fingering with the left non-dominant upper extremity; occasional overhead reaching with left non-dominant upper extremity; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; occasional exposure to extreme cold, extreme heat, and vibration; no exposure to hazards such as unprotected heights and moving mechanical machinery; and able to understand, remember, and carry out simple, and some complex, tasks in a routine, low-stress work setting involving few workplace changes.  AR at 34.

The ALJ generally based the RFC determination by reviewing plaintiff's impairments and finding many of her symptoms improved with treatment.  AR at 35-38.  In reaching this RFC assessment, the ALJ considered the objective medical evidence pertaining to plaintiff's degenerative disc disease of the lumbar spine, torn labrum and degenerative joint disease of the left hip post reconstructive surgery, fibroadipose vascular anomaly, degenerative disc disease of the cervical spine, left carpal tunnel syndrome, depression, and anxiety.  *Id.*

The ALJ also considered the opinions of the non-examining state agency physicians, Drs. R. Bitonte and U. Reddy,  and found them unpersuasive and unsupported by the medical evidence in the record.  AR at 38.  Drs. Bitonte and Reddy reviewed the medical records available at the time, and provided their

assessments on June 13 and September 20, 2019, respectively.  AR at 90-91, 106-07.  The doctors generally assessed that plaintiff could perform light work with certain limitations.  *Id*.  The ALJ discounted their opinions because they overstate plaintiff's exertional levels, overlook manipulative limitations due to plaintiff's cervical spine degenerative disc disease and left carpal tunnel syndrome, and predate "at least part of the relevant period, thereby preventing them from being accurate, comprehensive opinions regarding [plaintiff's] overall physical limitations."  AR at 38.  The ALJ noted, however, that Dr. Reddy's opinion was "more but not fully consistent with the record" because Dr. Reddy also added environmental limitations to plaintiff's functional limitations assessment, which limitations the ALJ accepted.  *Id*.

The ALJ also found plaintiff's subjective symptom testimony not entirely consistent with the objective medical findings that revealed largely unremarkable findings and symptoms that were otherwise controlled with conservative treatment modalities.  AR at 35.  The ALJ did not consider the opinions of any treating physicians because they did not provide medical source statements.  Additionally, the ALJ did not consider any consultative examination opinions because there were no such opinions in the record.[3]

### 3.   <u>Analysis</u>

The issue here is whether the ALJ could solely rely on her own interpretation of the medical records in order to make an RFC determination or had a duty to further develop the record.  *See* P. Mem. at 4-8.  Apart from Dr. Bitone and Dr. Reddy, whose opinions the ALJ found unpersuasive in many respects, no other physician reviewed plaintiff's medical records reflecting her physical

---

[3]   Because plaintiff does not appear to challenge the ALJ's review of her mental impairments, medical opinions and administrative findings, the court does not discuss those findings.

impairments or provided an opinion about her RFC.  The ALJ's RFC determination was largely consistent with the environmental and some of the postural limitations opined by Dr. Reddy, but the ALJ assessed greater exertional and manipulative limitations.  *See* AR at 34, 106-07.  Thus, the ALJ's RFC determination concerning the limiting effects of plaintiff's degenerative disc disease of the lumbar spine, torn labrum and degenerative joint disease of the left hip post reconstructive surgery, fibroadipose vascular anomaly, degenerative disc disease of the cervical spine, and left carpal tunnel syndrome was largely based on the ALJ's own interpretation of the MRIs and treatment notes.  AR at 34-39.

An ALJ may not act as her own medical expert because she is "simply not qualified to interpret raw medical data in functional terms."  *Rivera v. Berryhill*, 2017 WL 5054656, at *4 (C.D. Cal. Oct. 31, 2017) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ should not make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data); *Afanador v. Barnhart*, 2002 WL 31497570, at *4 (N.D. Cal. Nov. 6, 2002) (ALJ failed to develop the record when she did not obtain a medical opinion concerning claimant's specific diagnosis).  The absence of a medical opinion is not necessarily fatal, but the RFC determination still must be supported by substantial evidence.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ must provide evidentiary support for his interpretation of medical evidence).

Defendant argues "[t]he ALJ properly found that plaintiff could perform a

1   reduced range of sedentary exertion work with manipulative and postural

2   limitations in a low stress setting involving few workplace changes." D. Mem. at

3   13. Defendant contends that this finding is supported by substantial evidence since

4   none of the medical sources who assessed plaintiff's functional abilities found

5   limitations greater than those found by the ALJ. *Id.* (citing AR at 37-39). Plaintiff

6   contends the ALJ's assessment of the medical evidence is "problematic because of

7   the wide array of objective and clinical findings that have manifested at different

8   times. P. Mem. at 6. Plaintiff cites to her MRI records reflecting severe and mild

9   findings (AR at 338, 340, 385), as well as records showing low grade and minimal

10  findings (AR at 333, 343). *Id.* at 7.

11         In *Penny v. Sullivan*, the Ninth Circuit held that "[w]ithout a personal

12  medical evaluation it is almost impossible to assess the residual functional capacity

13  of any individual." 2 F.3d 953, 958 (9th Cir. 1993). As an initial matter, the

14  *Penny*'s court deference to examining opinions is no longer warranted by existing

15  SSA regulations. *See* 20 C.F.R. § 416.920c(a) (ALJs must not "defer or give any

16  specific evidentiary weight, including controlling weight, to any medical

17  opinion(s) or prior administrative medical finding(s), including those from [the

18  claimant's] medical sources"); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir.

19  2022) ("The revised social security regulations are clearly irreconcilable with our

20  caselaw according special deference to the opinions of treating and examining

21  physicians on account of their relationship with the claimant." (citing 20 C.F.R.

22  § 404.1520c(a))).[4] Thus, the question after the new regulations and *Woods* is

23  whether some medical source, examining or not, has to interpret every probative

24  piece of objective medical evidence before it can be used by the ALJ to formulate

25  the RFC.

26

27         [4]   Plaintiff filed her application on April 15, 2019, so the March 27, 2017

28  regulations apply to this case. *See* 20 C.F.R. § 416.920c.

Some courts have interpreted *Penny* and its progeny to require that an ALJ's RFC determination be completely supported by a medical source opinion. *See, e.g.*, *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion . . . , and he must not succumb to the temptation to play doctor and make his own independent medical findings." (cleaned up)); *De Gutierrez v. Saul*, 2020 WL 5701019, at *5-6 (E.D. Cal. Sept. 24, 2020) ("The ALJ was not qualified to translate the data into functional limitations and engage in her own exploration and assessment of Plaintiff's impairments." (internal quotation marks omitted)). Other courts have held that *Penny* does not establish such a requirement. *See, e.g.*, *Burns v. Saul*, 2020 WL 1547438, at *15 (E.D. Cal. Apr. 1, 2020) ("*Penny* did not hold that an ALJ must always secure an expert medical opinion to deny benefits."); *Hall v. Colvin*, 2015 WL 5708465, at *3 n.3 (C.D. Cal. Sept. 29, 2015) (distinguishing *Penny* because the ALJ in *Hall* relied on the findings and reports of plaintiff's treating physicians in assessing the RFC). Still other courts take a middle-ground approach, namely, that "'an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" *Javier A. G. v. Saul*, 2020 WL 6940042, at *9 (C.D. Cal. Nov. 25, 2020) (quoting *Manso-Pizarro v. Sec'y of Health & Hum. Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)); *Manso-Pizarro*, 76 F.3d at 17 ("Of course, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment." (citations omitted)); *Duarte v. Saul*, 2020 WL 5257597, at *5 (E.D. Cal. Sept. 3, 2020) ("Barring a few exceptions, an ALJ must have a doctor's opinion of a claimant's functional capacity in order for there to be substantial evidence supporting the decision." (citing *Manso-Pizarro*, 76 F.3d at 17)).

Based on the conflicting caselaw, the new regulations, and the recent *Woods* decision, the court is persuaded that a middle-ground approach is most appropriate. That said, the court first notes that this is not a case in which the ALJ crafted the RFC without the benefit of any medical opinion. The ALJ had the assessments of Drs. Bitonte and Reddy, but rejected those assessments in many respects, finding that the record as a whole warranted greater exertional and manipulative limitations in the RFC determination. AR at 38. The issue, though, is that, as the ALJ notes, those opinions predate part of the relevant period. *See id.* The question is whether the ALJ fairly determined that the more recent medical records not considered by Drs. Bitonte and Reddy needed no additional medical expert interpretation.

The court finds the ALJ erred by independently interpreting plaintiff's medical records and imaging data. Courts have considered MRIs, radiological studies, and X-rays to be raw medical data. *See Mack v. Saul*, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) (duty to develop where the ALJ improperly determined RFC after considering MRIs and radiological studies absent a doctor's opinion regarding the effect on plaintiff's ability to work on a function-by-function basis); *see also Escudero v. Comm'r of Soc. Sec.*, 2019 WL 4917634, *2 (E.D. Cal. Oct. 4, 2019) (RFC not based on substantial evidence where the ALJ considered x-rays and records indicating plaintiff's diabetes diagnoses post-dated the accepted physician's opinion on which the ALJ based the RFC). Such records generally reflect only the findings, impressions, and medical diagnoses, which are difficult for a lay person to interpret. *See Escudero*, 2019 WL 4917634, at *2 (finding "descriptions of medical documents post-dating the physician's opinions appear to be very medical in nature and not susceptible to a lay understanding.").

Defendant fails to establish that the extent of plaintiff's functional limitations during the relevant time was apparent to a lay person. Specifically, the court is not convinced the ALJ was qualified to extract functional limitations from

plaintiff's treatment and radiology records reflecting severe enhancement of the left trochanteric bursa or bursitis in addition to partial thickness tear of the left gluteus medius tendon (AR at 338), fibroadipose vascular anomaly ("FAVA") versus venous malformation (AR at 340), lumbar spine minimal facet arthrosis and foraminal stenosis (AR at 333), right knee mild degenerative changes (AR at 343), low grade sprain; trace popliteal cyst, trace pes anserine bursitis; low grade cartilage loss; and mild edema (AR at 387), osteophytes with mild right joint hypertrophy in the cervical spine (AR at 385), angiogram of the left calf venous malformation confirmed (AR at 577), low grade partial thickness bursal sided tearing and/or fraying; mild bursitis with synovitis; mild infraspinatus and moderate upper and mid subscapularis tendinosis of the left shoulder (AR at 586), mild degenerative changes in the left hand (AR at 697), and EMG records showing moderate carpal tunnel syndrome (AR at 590).

Significantly, the later records reflecting plaintiff's cervical spine impairment and carpal tunnel syndrome from late 2019 and 2020 do not include a medical opinion about plaintiff's capabilities or an analysis of plaintiff's function-by-function capabilities.  The ALJ apparently interpreted the raw medical data, independently evaluated plaintiff's functional capabilities, and substituted her judgment for that of a medical expert.  The fact that the ALJ imposed greater limitations than the reviewing physicians is inconsequential here. The ALJ properly found those opinions unpersuasive because Drs. Bitonte and Reddy did not have the entirety of plaintiff's medical record at the time of their assessment.

The court recognizes the ALJ's analysis here was quite thorough and detailed.  Nevertheless, there is no expert medical opinion in the record interpreting a significant number of medical records, including imaging studies.  A duty to develop may exist where the ALJ is interpreting raw medical data or records that are not "susceptible to a lay person's understanding." *See Mack* 2020 WL

2731032, at *3 (remanded for further development of the record where the court found that the ALJ substituted his own judgment for that of a medical professional in considering MRIs and other radiology studies that no physician was asked to review); *Rivera v. Berryhill*, 2017 WL 5054656 (C.D. Cal. Oct. 31, 2017) (an ALJ "may not act as his own medical expert as he is 'simply not qualified to interpret raw medical data in functional terms'"). The court is particularly hesitant to find no error or harmless error in the context of complex physical impairments that require evaluation of radiology records.

Because the ALJ largely rejected Drs. Bitonte and Reddy's opined limitations and the record does not contain an opinion or interpretation of the functional limitations resulting from the late 2019 through 2020 diagnoses in combination with plaintiff's prior diagnoses, the ALJ's duty to further develop the record was triggered, warranting either a consultative examination or medical expert opinion by a physician who had access to plaintiff's medical records through, at minimum, the April 2020 diagnosis of cervical disc disorder with myelopathy. *See Tonapetyan*, 242 F.3d at 1151 (reversing and remanding for further proceedings where the ALJ's RFC determination was not based on a fully developed record). As such, the court concludes the ALJ's RFC determination was not supported by substantial evidence due to her failure to develop the record fully.

**B.      The ALJ Failed to Properly Consider Plaintiff's Symptom Testimony**

Plaintiff also argues the ALJ failed to articulate clear and convincing reasons for discounting her testimony regarding the limiting effects of her physical and mental impairments. P. Mem. at 8-12.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. "Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration." *Id.* (citing 20 C.F.R. § 402.35(b)(1)). In

15

adopting SSR 16-3p, the SSA sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (quoting *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step, and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: a claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929; SSR 16-3p, 2017 WL 5180304, at *4; *Smolen*, 80 F.3d at 1283-84 & n.8 (9th Cir. 1996)). To reject a claimant's subjective symptom

16

statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Id.* at 921, 929.

### 1.   Plaintiff's Subjective Symptom Testimony

The ALJ summarized plaintiff's testimony as follows.  At the hearing, plaintiff testified that she began doing temporary work as of July 20, 2020, investigating and calling patients who are positive for COVID-19, currently working for 8 to 16 hours per week and is trying to commit to Mondays and Wednesdays. AR at 35; *see id.* at 56-57.  Plaintiff  lives in a house with her two sons, 18-year-old nephew, and husband, who is a "100%" disabled, unemployed veteran and she acts as his caregiver through a Department of Veteran Affairs (VA) support program.  AR at 35; *see id.* at 58.  Plaintiff testified that on an average day, she and her husband do not sleep well and alternate caring duties for her sons because of their respective issues, while her nephew helps out with the daily chores.  AR at 35; *see id.* at 59.

Plaintiff testified she had a fibroadipose vascular anomaly since age 8 involving her left calf and injured her back while working at UPS in 1999.  AR at 35; *see id.*  at  62-63.  Plaintiff stated that not many physicians treat this anomaly, but she found a leading surgeon in Boston who will help her start a treatment plan as she will eventually need to have the cells and tumor removed from her leg.  AR at 35; *see id.* at 65.

Plaintiff also testified that she has headaches and eye pain, severe pain that runs from her fingers to her hand to her arm.  AR at 35; *see id.* at 65-66.  She experiences stomach problems including irritable bowel syndrome as a result of taking her pain medications, she also experiences symptoms of depression, including thoughts of suicide.  AR at 35; *see id.* at 67.

In her memorandum, plaintiff highlighted additional parts of her hearing

1   testimony.  She testified that on May 26, 2020 she underwent carpal tunnel

2   surgery. AR at 67.  She requires frequent breaks, which interferes with her ability

3   to work, and has difficulty standing or sitting for "too long."  AR at 66, 68-69.  She

4   also experiences sedative effects from medication.  *Id*.

5   **2.    The ALJ's Findings**

6          At the first step for evaluating a claimant's symptom testimony, the ALJ

7   found plaintiff's medically determinable impairments could reasonably be

8   expected to cause the symptoms alleged.  AR at 35.  At the second step, the ALJ

9   partly discounted plaintiff's testimony concerning the intensity, persistence, and

10  limiting effects of her symptoms as not entirely consistent with the medical

11  evidence and other evidence in the record.  *Id*.  Because plaintiff cleared step one

12  and the ALJ found no evidence of malingering, the ALJ's reasons for discounting

13  plaintiff's testimony had to be specific, clear, convincing, and supported by

14  substantial evidence.  Here, the ALJ found plaintiff's symptom testimony was not

15  "entirely consistent" with the "objective medical findings in the record [revealing]

16  largely unremarkable findings and symptoms that were otherwise reasonably

17  controlled with conservative treatment modalities."  *Id*.

18         Plaintiff argues, the surgical procedures she received are not properly

19  characterized as conservative treatment.  P. Mem. at 10.  The record shows plaintiff

20  had undergone arthroscopic surgery (AR at 316), and she was in discussions with

21  Boston Children's Hospital regarding obtaining surgical treatment for FAVA (AR

22  at 65).  Plaintiff also testified at the hearing she had undergone carpal tunnel

23  release surgery on May 26, 2020.  AR at 67, 781; *see Ritchotte v. Astrue*, 281 Fed.

24  Appx. 757, 759 (9th Cir. 2008) (rejecting the ALJ's conclusion that the claimant's

25  treatment was conservative where he had surgery); *see also Barrino v. Berryhill*,

26  2017 WL 977670, at *9 (E.D. Cal. Mar. 14, 2017) ("[s]urgery is not conservative

27  treatment"); *Sanchez v. Colvin*, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013)

28

("surgery and conservative measures are at different ends of the treatment spectrum"); *Huerta v. Berryhill*, 2019 WL 2009112, at *4 (C.D. Cal. May 7, 2019) ("rotator cuff surgery obviously undermines the ALJ's dismissal of [the claimant's] right shoulder impairment based on conservative treatment").  Defendant argues that plaintiff's symptoms improved with conservative treatment such as physical therapy and medication, and that this was the bulk of her treatment.  D. Mem. at 7-8.  Even so, the ALJ's finding that plaintiff's symptoms were controlled with conservative treatment, which clearly was not entirely the case given her surgeries.  Thus, the ALJ erred in disregarding plaintiff's arthroscopic surgery and carpal tunnel release surgery when discounting plaintiff's subjective complaints.

The ALJ also discounted plaintiff's testimony because there was no objective medical evidence from the alleged period of disability to support plaintiff's purported limitations.  AR at 35-38.  The lack of objective medical evidence to support allegations of limitations is a factor that may be considered when evaluating credibility, but it is insufficient by itself.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medicine may be one factor in evaluating credibility);  *Bunnell v. Sullivan*, 947 F.2d 341,345 (9th Cir. 1991) (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").  Accordingly, this reason for rejecting plaintiff's testimony is insufficient by itself.

Defendant argues that plaintiff's activities of daily living constituted a reason supported by substantial evidence for discounting plaintiff's symptom testimony.  D. Mem. at 9-11.  But as plaintiff correctly states, "the ALJ noted [plaintiff's] activities of daily living in assessing her mental capacity for functioning in the specific category of adapting or managing one's self," not in evaluating her symptom testimony.  P. Reply at 10; *see* AR at 33.  Likewise,

1  plaintiff's work during the relevant period was not a reason given by the ALJ to

2  discount plaintiff's testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th

3  Cir. 2003) (reviewing court "is constrained to review the reasons the ALJ asserts"

4  and finding error where court affirmed ALJ's decision "based on evidence that the

5  ALJ did not discuss").

6       Accordingly, the ALJ failed to provide clear and convincing reasons

7  supported by substantial evidence to discount plaintiff's testimony.

8  **V.**

9  **REMAND IS APPROPRIATE**

10  The decision whether to remand for further proceedings or reverse and award

11  benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888

12  F.2d 599, 603 (9th Cir. 1989).  Typically, in accordance with the "ordinary remand

13  rule," the reviewing court will remand to the Commissioner for additional

14  investigation or explanation upon finding error by the ALJ.  *Treichler v. Comm'r*,

15  775 F.3d 1090, 1099 (9th Cir. 2014).  Nonetheless, it is appropriate for the court to

16  exercise its discretion to direct an immediate award of benefits where: "(1) the

17  record has been fully developed and further administrative proceedings would

18  serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons

19  for rejecting evidence, whether claimant testimony or medical opinions; and (3) if

20  the improperly discredited evidence were credited as true, the ALJ would be

21  required to find the claimant disabled on remand."  *Garrison v. Colvin*, 759 F.3d

22  995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for

23  remanding with instructions to calculate and award benefits).  But where there are

24  outstanding issues that must be resolved before a determination can be made, or it

25  is not clear from the record that the ALJ would be required to find a plaintiff

26  disabled if all the evidence were properly evaluated, remand for further

27  proceedings is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th

28

Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021. Here, remand is required because the ALJ failed to fully develop the record and failed to provide clear and convincing reasons for discounting plaintiff's testimony. On remand, the ALJ should obtain at least one expert medical opinion regarding all the relevant medical records.  The ALJ should also reconsider plaintiff's subjective complaints and either credit her testimony or provide clear and convincing reasons supported by substantial evidence for rejecting it.  The ALJ shall then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: March 29, 2023

SHERI PYM
United States Magistrate Judge